IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JEREMY L. WILSON, | ) | Civil No.: 3:10-cv-01202-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

> David B. Lowry
> Attorney at Law
> 16200 SW Pacific Hwy, Suite H-233
> Portland, OR 97224
>
>     Attorney for Plaintiff
>
> Dwight C. Holton, U.S. Attorney
> Adrian L. Brown, Asst. U.S. Attorney
> 1000 S.W. 3rd Avenue, Suite 600
> Portland, OR 97204
>
> Benjamin Groebner
> Special Asst. U.S. Attorney
> Office of the General Counsel
> Social Security Administration
> 701 5th Avenue, Suite 2900 M/S 221 A
> Seattle, WA 98104-7075
>
>     Attorneys for Defendants

FINDINGS AND RECOMMENDATION – 1

JELDERKS, Magistrate Judge:

Plaintiff Jeremy Wilson brings this action against the Commissioner of Social Security (the Commissioner) pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision denying his applications for Social Security Disability Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, Plaintiff asks that the action be remanded for further proceedings.

For the reasons set out below, the decision of the Commission should be remanded to the Agency for further proceedings.


**Procedural Background**

Plaintiff filed an application for DIB on November 8, 2007, and filed an application for SSI on January 22, 2008. In both applications, he alleged that he had been disabled since April 1, 2006.

After Plaintiff's applications were denied initially and upon reconsideration, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). A hearing was held before ALJ Richard Say on September 9, 2009, and a supplemental hearing was held before ALJ Say on December 18, 2009.

On January 19, 2009, ALJ Say issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act (the Act). That decision became the final decision of the Commissioner on August 26, 2010, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff seeks review of that decision.

FINDINGS AND RECOMMENDATION – 2

## **Factual Background**

Plaintiff was born on January 2, 1973, and was 36 years old at the time of the hearings before the ALJ.  He was diagnosed with a learning disability in the 8th grade, and was placed in an individualized educational program (IEP).  Plaintiff completed 8th grade, and has obtained a GED.

## **Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or

equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

**Medical Record**

Todd Bowerly, Ph.D., a licensed clinical psychologist, completed a psychological evaluation dated July 3, 2006.  He indicated that Plaintiff did not have any problems completing activities of daily living, demonstrated adequate social interaction skills, exhibited variable

attention/concentration skills, and had no periods of decompensation. Dr. Bowerly assessed

Plaintiff's GAF as 70 at that time, which indicated some mild symptoms such as depressed mood

and mild insomnia or some difficulty in social, occupational, or school functioning. He opined

that Plaintiff's test scores suggested the possibility of malingering, and concluded that Plaintiff

demonstrated adequate understanding, reasoning, memory, social interaction skill, and adaptive

abilities.

On July 7, 2006, Dr. Robert Burlingame diagnosed Plaintiff with post-traumatic stress

disorder (PTSD) and attention deficit hyperactivity disorder (ADHD). He indicated that

Plaintiff's Global Assessment of Functioning (GAF) score at that time was 40, and that it had

been 50 the previous year. Dr. Burlingame completed a psychiatric evaluation, and found that

Plaintiff was depressed, angry, and anxious, exhibited odd behavior, that his thought process was

accelerated and "over-active," that he demonstrated preoccupations and obsessions, and that he

was "over-thinking everything." He indicated that Plaintiff's memory was "side-tracked," that

Plaintiff experienced panic, and that Plaintiff's impulse control was "explosive."

Kim Goodale, Psy. D., conducted a psychodiagnostic evaluation of Plaintiff on December 6,

2007. Dr. Goodale concluded that Plaintiff could be expected to engage in appropriate social

interaction and maintain adequate functioning in daily activities. She diagnosed Plaintiff with

ADHD, and assessed his GAF at the time as 65.

In a form dated December 21, 2007, Dorothy Anderson, Ph.D., a non-examining state

agency physician, opined that Plaintiff was moderately limited in his ability to carry out detailed

instructions, interact appropriately with the general public, and get along with coworkers or peers

without distracting them or exhibiting behavioral extremes. Dr. Anderson indicated that Plaintiff

had ADHD and PTSD, and found that he had moderate restrictions of activities of daily living,

moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.

In a form dated February 4, 2008, Paul Rethinger, Ph.D., another non-examining state agency physician, indicated that Plaintiff had ADHD and a possible Learning Disorder. He assessed Plaintiff with moderate difficulties in maintaining social functioning and in maintaining concentration, and with moderate limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, work in coordination with or proximity to others without being distracted by them, and interact appropriately with the general public.

In a form dated May 6, 2009, Stephanie Wells, QMHP, and Kathryn Smith, whose credentials are not indicated in the record, diagnosed Plaintiff with anxiety and depressive disorders, and completed a questionnaire listing 19 signs and symptoms supporting this diagnosis. In a form dated May 10, 2009, Ms. Smith opined that Plaintiff was markedly limited in his ability to respond appropriately to changes in a routine work setting, and was extremely limited in his ability to accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, and deal with normal work stress.

In a form dated December 17, 2009, Anna Long, PMHNP, opined that Plaintiff had a temporary disability, characterized as "psychiatric symptoms," which was expected to last 12 months. On June 22, 2010, Ms. Long diagnosed Plaintiff with generalized anxiety disorder and depressive disorder, NOS.

**Hearing Testimony**

A. <u>First Hearing</u>

1. <u>Plaintiff's testimony</u>

Plaintiff testified as follows at the hearings held in 2009:

Plaintiff was diagnosed with a learning disability in the 8th grade and placed in an IEP program.  He took special education classes in high school, and cannot add and subtract well.

Plaintiff has been fired from approximately 55 of the 75 jobs he has held throughout his life.  He has been fired for unsatisfactory work performance, failure to get along with coworkers and supervisors, and lack of skills.

Though he has worked several jobs for short periods since that time, he considers himself to be disabled since being diagnosed with PTSD in April, 2006.  Plaintiff worked for Standard Parking Corporation for a short time in 2007.  He also worked as a seasonal pool monitor for several months that year, but was not rehired because he did not get along with his coworkers. Plaintiff worked for the Salvation Army as a seasonal employee in 2008, and worked for another employer for 1 day before being fired for lack of his own transportation.  He was fired from Kmart for unsatisfactory performance in 2008, and also worked a short time for Target.

In 2009, Lutheran Family Services diagnosed Plaintiff with an anxiety disorder and a learning disability.  Plaintiff's  failure to remember and comprehend what he is told is frustrating to people who try to train him, and he is usually fired before he has worked three weeks.

About once a week, Plaintiff experiences a panic attack that lasts for a few hours. Plaintiff has problems with anger control and irritability once or twice a week.  When these problems occur, he raises his voice and uses "bad words."

Plaintiff suffers from depression, which has significantly affected his level of interest in activities around him.  When he is depressed, Plaintiff does not want to get out of bed or take care of himself, or do the laundry or other house work.  He eats only one time per day because depression has affected his appetite, and anxiety and thoughts of the future and of being fired keep him awake for two hours when he goes to bed.  Sometimes Plaintiff loses his concentration, goes into his own world, and talks to himself in public.  Depression affects Plaintiff's ability to concentrate, think, and function, and Plaintiff could not think of any job he has done during the past 15 years that he could perform at the time of the hearing.  When he watches a movie, Plaintiff cannot follow the action or remember what happened earlier.

About 50% of Plaintiff's days are "bad days," and 50% are "good days."  Thinking about his situation and bad weather can bring on a "bad" day.


2. <u>Testimony of Plaintiff's mother</u>

Plaintiff's mother testified as follows:

Plaintiff lived with his mother from December, 2007, to July, 2008.  Plaintiff has mental or emotional problems and does not think logically like most people his age.  He has problems with memory, attention, and concentration, and cannot remember directions for more than 30 minutes.  Plaintiff has problems with anger control, and can remain angry for days.  When he is angry, he raises his voice, uses "bad" words, and throws things.  He has kicked his mother.  Plaintiff is introverted, and has difficulty interacting with others.  When he was in school, Plaintiff's teachers told Plaintiff's mother that he was "slow."

3. Testimony of Plaintiff's grandmother

        Plaintiff's grandmother testified as follows:

        When Plaintiff does yard work, he works for 15 minutes, then rests for 15 to 20 minutes. He is slower than most people, and functions at about 15% of the pace of normal people. Plaintiff does not take direction well, and needs to have instructions repeated more than 5 times. Plaintiff is paranoid around persons with authority, and sometimes sits in the yard rocking back and forth and screaming, or jumping up and down while pointing his fist. During his angry episodes, which last for hours, Plaintiff raises his voice and uses "bad" words. Plaintiff's attempts to work for his grandmother's ex-husband, a general contractor, were unsuccessful because he had to be told "the same thing over and over."

B. Second Hearing

1. Margaret Moore, M.D.

        Dr. Moore, a non-examining clinical psychologist, testified as a medical expert (ME) at Plaintiff's second hearing. She testified that the medical evidence supported a diagnosis of ADHD, but that Dr. Burlingame's notes had little of substance, and not enough information to support his PTSD diagnosis. Dr. Moore opined that there was nothing in the record to support a PTSD diagnosis. She opined that, though Plaintiff had difficulties with attention, he had misrepresented himself in July, 2006. Dr. Moore said she could not determine whether he engaged in "deliberate efforts" to malinger during the evaluation. She found that he had issues with attention and concentration, and that he might have "some reasonably derived diagnosis related to anxiety and depression . . . ."

FINDINGS AND RECOMMENDATION – 9

2. Vocational Expert

> The ALJ posed the following vocational hypothetical to the vocational expert (VE):

> Assume we have an individual 36 years old, with the equivalent of a high school education, he has work history . . . described. I didn't see any exertion limits, so I would say no exertion limits. This individual would be able to understand, remember and carry out short, simple instructions, perform routine tasks. I should say after that testimony from Dr. Moore, this individual can do at least this much. Able to tolerate occasional or brief interaction with the general public, and also occasional, brief interaction with coworkers and supervisors.

> The VE testified that such an individual could not perform any of Plaintiff's past relevant work, but could work as a laundry worker or as a janitor/cleaner.

> Counsel for Plaintiff asked the VE to assume a number of the limitations set out in the mental impairment questionnaire completed by Katherine Smith at Lutheran Family Services. The VE testified that poor pace would be the greatest obstacle, and that an individual with these limitations could not sustain competitive employment.


**Witness Statements**

Plaintiff's mother, grandmother, and several friends and acquaintances submitted witness statements describing Plaintiff's impairments and difficulties functioning. They generally reported that Plaintiff had significant problems in activities of daily living, had very poor social skills, had significant problems with concentration and memory, had difficulty following instructions and taking directions, did not get along with authority figures, and was anxious and depressed.

FINDINGS AND RECOMMENDATION – 10

**ALJ's Decision**

At the first step of his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability on April 1, 2006.

At the second step, the ALJ found that Plaintiff had organic mental disorders and anxiety which were severe impairments.

At the third step, he concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled an impairment in the "listings," 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ next determined that Plaintiff's residual functional capacity (RFC) allowed Plaintiff to perform a full range of work at all exertional levels, but that Plaintiff had nonexertional limitations which allowed him to understand, remember, and carry out only short, simple instructions, perform only routine tasks, and "tolerate" only "occasional, brief interactions with the general public, coworkers, and supervisors." In reaching this conclusion, the ALJ noted evidence suggesting possible malingering, and asserted that Plaintiff's testimony supported this residual functional capacity (RFC) assessment. However, as discussed below, the ALJ stated no opinion as to Plaintiff's credibility.

At the fourth step of his disability analysis, the ALJ found that Plaintiff could not perform his past relevant work as a pool cleaner/attendant, inventory clerk, or cashier/gas station attendant .

At the fifth step, he found that Plaintiff could perform the duties of laundry worker and cleaner/janitor positions.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## **Discussion**

Plaintiff contends that the ALJ failed to provide the required support for his rejection of the statements of lay witnesses, erred in ignoring Plaintiff's treating physician's opinions and rejecting opinions of "treating medical professionals," failed to provide clear and convincing reasons for rejecting Plaintiff's testimony, and failed to accurately assess Plaintiff's RFC.

Because they are the basis of my recommendation that this action be remanded for further proceedings, I will address the issues of Plaintiff's credibility and the ALJ's assessment of medical opinion first.

1. **Plaintiff's credibility**

a. **Applicable standards**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ  may not discredit the claimant's statements concerning the severity of his symptoms merely because they are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)(en banc)).  If a claimant produces medical evidence of an underlying impairment and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons, supported by substantial evidence, to support a determination that the claimant was not wholly credible. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); SSR 96-7p.   If it is supported by substantial evidence, the ALJ's credibility determination must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  In addition, SSR 96-7 requires an ALJ to consider the entire record and to consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than

medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."  An ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies or contradictions between the claimant's complaints and his activities of daily living.  Thomas, 278 F.3d at 958-59 (9th Cir. 2002).


b. **Analysis**

  The ALJ here set out the factors listed in SSR 96-7 to be considered in assessing a claimant's credibility.  He correctly noted evidence suggesting that Plaintiff may have been malingering, and cited medical evidence that was inconsistent with Plaintiff's statements concerning the severity and effects of his impairments, implying that he may have found that Plaintiff was not credible.  However, the ALJ also made some statements that appeared to credit Plaintiff's testimony.  For example, he gave Dr. Bowerly's opinion "some weight because it is in accordance with claimant's testimony at the hearing," and accepted Plaintiff's testimony that he could prepare meals for 30 minutes while rejecting his mother's testimony that he could concentrate for only 10 minutes.  In rejecting a third party witness's statements concerning Plaintiff's mathematical skills, the ALJ cited Plaintiff's own statements concerning his ability to count change, handle a savings account, and use check books and money orders.

  Because Plaintiff described symptoms and limitations that would appear to preclude any full time competitive employment, I must conclude that, despite statements crediting portions of his testimony, the ALJ rejected at least some parts of his testimony.  However, the ALJ never explicitly stated whether he had concluded that Plaintiff was malingering, or clearly stated any conclusion as to his assessment of Plaintiff's credibility.  Though his discussion of the medical

record referred to evidence that could have supported a negative assessment of Plaintiff's credibility, the ALJ neither directly related that evidence to a credibility determination, or indicated what portions of Plaintiff's testimony he found were not credible.

The Commissioner contends that the ALJ set out clear and convincing reasons for finding that Plaintiff was not credible, and asserts that these reasons were supported by substantial evidence in the record. This argument fails. In the absence of any specific findings as to Plaintiff's credibility, the court can only speculate as to what evidence the ALJ credited and rejected, why the ALJ appears to have concluded that Plaintiff was not wholly credible, and what evidence the ALJ may have thought supported his unstated credibility determination.

The ALJ erred in failing to unambiguously state his conclusions concerning Plaintiff's credibility, in failing to specify what testimony he found not to be credible, and in failing to specify the evidence that he thought undermined Plaintiff's allegations. Given this failure, the court could speculate as to which parts of Plaintiff's testimony the ALJ apparently concluded were not credible, and as to the reasons the ALJ could have provided to support a negative credibility determination. However, as noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. The court is limited to a review of the ALJ's conclusions and reasoning, and that review is to be carried out without speculation. See, e.g., Bunnell, 947 F.2d at 345-46 (9th Cir. 1991) (court should not have to speculate as to grounds for adjudicator's rejection of claimant's allegations).

When an ALJ improperly rejects a claimant's testimony regarding his limitations, and the claimant would be found disabled if the testimony were credited, courts do not remand solely to allow an ALJ to make further findings concerning testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Instead, whether the action is remanded for an award of benefits or for further

proceedings depends on the likely utility of additional proceedings.  Harman v. Apfel, 211 F.3d

1172, 1179 (9th Cir. 2000).  Remand for an award of benefits is appropriate only if the ALJ failed

to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues to be

resolved before a determination of disability can be made, and it is clear from the record that the

ALJ would be required to find the claimant disabled if the evidence in question were credited.

Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

        Here, given the considerable evidence in the record that could support the conclusion that

Plaintiff was not as impaired as he alleged, and the uncertainty as to what allegations the ALJ did

not accept, it is not clear that a finding of disability would be required if Plaintiff were found to

be credible.  In addition, as discussed below, further clarification of the ALJ's evaluation of the

records and opinions of a treating physician, and further evaluation of the statements of an "other

source" are needed.  Under these circumstances, remand for further proceedings is appropriate.

        If my recommendation that this action be remanded is adopted, on remand an ALJ should

be directed to clearly state conclusions as to Plaintiff's credibility.  If Plaintiff is found not to be

wholly credible, the parts of his testimony not considered credible should be specified, and

evidence supporting the conclusion that this testimony is not credible should be identified.


2. **Treating physician's opinion**

        As noted above, Dr. Robert Burlingame, a treating physician, diagnosed Plaintiff with

post-traumatic stress disorder (PTSD) and attention deficit hyperactivity disorder (ADHD).  He

opined that Plaintiff's Global Assessment of Functioning (GAF) score in 2006 was 40, and that it

had been 50 previous year.  On July 6, 2006, Dr. Burlingame completed a psychiatric evaluation,

and found that Plaintiff was depressed, angry, and anxious, exhibited odd behavior, demonstrated

a thought process that was accelerated and "over-active," had preoccupations and obsessions, and that he was "over-thinking everything." Dr. Burlingame indicated that Plaintiff's memory was "side-tracked," that Plaintiff experienced panic, and that Plaintiff's impulse control was "explosive."

The ALJ's decision makes no reference to Dr. Burlingame, or to his evaluation or opinions. The Commissioner acknowledges this omission, but contends that the court can nevertheless "draw specific and legitimate inferences from the ALJ's opinion" concerning the ALJ's assessment of Dr. Burlingame's conclusions. Defendant's brief at 10 (quoting Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989)). The Commissioner notes that Dr. Moore, the M.E., testified concerning Dr. Burlingame's treatment notes and concluded that his opinion was not supported. The Commissioner asserts that, "by accepting Dr. Moore's opinion, the ALJ implicitly rejected Dr. Burlingame's opinion." Citing Magallanes, he contends that this court should not require an "incantation" specifically citing and rejecting Dr. Burlingame's opinion in order to evaluate the ALJ's assessment of this medical source.

The Commissioner's reliance on Magallanes is misplaced, and I cannot conclude either that the ALJ did not err in failing to address Dr. Burlingame's opinion, or that this error was harmless. In Magallanes, the ALJ did not specifically state that he rejected a physician's opinion as to the date of the onset of a claimant's disability. However, the ALJ's decision explicitly referred to the physician by name, and noted, discussed, and evaluated the physician's reports. Magallanes, 881 F.2d at 754. The ALJ's determination that a different onset of disability date was appropriate unambiguously indicated his disagreement with the onset of disability date opined by that physician.

FINDINGS AND RECOMMENDATION – 17

This contrasts starkly with the circumstances at issue here, where the ALJ did not mention Dr. Burlingame, summarize his treatment notes, set out or discuss his opinions, or accept other medical opinions in a manner that clearly reflected conclusions as to all Dr. Burlingame's statements and opinions that are relevant to the analysis of Plaintiff's claims.

The significance accorded to the opinions of treating physicians is a well-established fixture in Social Security jurisprudence: Because treating physicians have a greater opportunity to know and observe their patients, their opinions are entitled to greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). An ALJ must support the rejection of a treating physician's opinion with "findings setting forth specific and legitimate reasons for doing so that are based upon substantial evidence in the record." Magallanes v. Bowen, 881 F.2d at 751. An ALJ must provide clear and convincing reasons for rejecting the opinion of a treating physician that is not contradicted by another doctor. Lester v. Chater, 81 F.2d 821, 830-31 (9th Cir. 1995).

Here, the court could reasonably infer that the ALJ did not accept all of Dr. Burlingame's opinions concerning the severity of Plaintiff's impairments. However, as with the assessment of Plaintiff's credibility, the court cannot determine which statements the ALJ did accept, or conduct a meaningful review of the ALJ's reasons for disagreeing with those portions of Dr. Burlingame's opinion that he apparently rejected. Moreover, an ALJ's decision that does not mention significant evidence on which a claimant relies "cannot be said to be supported by substantial evidence in the record as a whole." Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).

Under these circumstances, evaluation of Dr. Burlingame's statements and opinions on remand is appropriate. If my recommendation is adopted, the ALJ should be directed, on

remand, to specifically address Dr. Burlingame's records and opinions, and to either accept those opinions or provide specific and legitimate reasons, supported by substantial evidence in the record, for their rejection.

3. **Opinion of Kathryn Smith**

Ms. Smith opined that Plaintiff was markedly limited in his ability to respond appropriately to changes in a routine work setting, and was extremely limited in his ability to accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, and deal with normal work stress.

The ALJ provided several not entirely consistent reasons for rejecting Ms. Smith's opinion.  He asserted that her assessment of the severity of Plaintiff's impairments was "not supported in the record," and that her qualifications were not established in the record.  He correctly asserted that, because she was not an "acceptable medical source," Ms. Smith's statements could "not be used to establish the existence of a medically determinable impairment," but could be "used to show the severity of the individual's impairment(s) and how it affects the individual's ability to function . . . ."  However, he then, erroneously concluded that Ms. Smith's opinion was entitled to "no weight because she is not an 'acceptable medical source' as defined in 20 C.F.R. §§ 204.1513(a) and 416.913(a)."

Because Ms. Smith was a lay witness, the ALJ was required to provide "germane" reasons for rejecting her statements.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Plaintiff contends that the ALJ failed to do so.  I agree.  The ALJ's assertion that Ms. Smith's assessment was "not supported by the record" was arguably germane.  However, given that he

erroneously asserted that her opinion merited "no weight" because she was not an "acceptable medical source," it appears that the ALJ may have entirely discounted her statements because she was not an "acceptable medical source," and not because those statements were not supported by the record.

If my recommendation that this action be remanded for further proceedings is adopted, the ALJ should be instructed to either credit Ms. Smith's statements or provide a clear explanation of the basis for their rejection.  Ms. Smith's statements cannot be simply rejected on the grounds that she was not an "acceptable medical source."


## 4. Rejection of other lay witness statements

The record includes lay witness statements from other individuals, some of whom testified at a hearing and provided written statements, and others who submitted only written statements.  The ALJ largely rejected these statements.  Plaintiff contends that he failed to provide legally sufficient reasons for doing so.  I disagree.

As noted above, an ALJ must provide reasons that are "germane" for discounting the testimony of lay witnesses.  Id.  Here, the ALJ reviewed the statements of each of the lay witnesses, and indicated that, as a group, he gave the statements "little weight" because of the witnesses' "lack of expertise," because "these parties have a personal relationship with the claimant" and might lack "the motivation to offer an objective or functional assessment . . . ," and because they "did not address the claimant's conservative treatment history."  He also discounted a number of the statements on the grounds that "check off reports" including "conclusory statements and opinions of disability solicited by counsel . . . are disfavored."

These are not acceptable reasons for rejecting lay witnesses' statements. ALJs are required to consider statements of "third parties who would be likely" to know about a claimant's symptoms and activities of daily living, and the statements cannot be disregarded merely because they are made by family members. E.g., Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) (quoting SSR 88-13). An ALJ may not reject the statements of lay witnesses simply based upon lack of "expertise." Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009). Though "check off" reports that include no explanation of the basis for the conclusions set out are disfavored, see Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996), the forms at issue here included space for the witnesses to explain their observations. In any event, opinions cannot be rejected merely because they are set out in a "check off" form. See Smolen, 80 F.3d at 1288.

Nevertheless, the ALJ provided other reasons for his assessment of lay witness statements. He concluded that all of these witnesses' descriptions of Plaintiff's functional limitations were "inconsistent with activities of daily living" noted in his decision, and set out additional reasons in his review of the statements of each of the lay witnesses. The ALJ noted inconsistencies between the statements of Ms. Dennis, Plaintiff's mother, and Plaintiff's own statements as support for his evaluation of Ms. Dennis's statements. He reasoned that the statements of Sherry Morris, Plaintiff's grandmother; and Ernest Reyes, Plaintiff's friend, merited little weight because they were "not in accordance with the medical evidence as a whole or the claimant's activities of daily living." He discounted the statements of Shelia Tayefemohajer on the grounds that she had very occasional contact with Plaintiff, and discounted the statements of Behzad Tayefemohajer because his observations concerning Plaintiff's ability to "comprehend and retain mathematical concepts" were inconsistent with Plaintiff's testimony.

The ALJ gave little weight to the statements of Donna Krupicka because they were inconsistent with the medical evidence as a whole and with Plaintiff's activities of daily living.

Based upon my review of the record, I conclude that the ALJ here satisfied the requirement that he provide reasons that are "germane" for according little weight to the lay witness statements.  His conclusion that a number of the statements were not consistent with the medical record and with Plaintiff's activities of daily living is supported by evidence in the record, and these are proper bases for discounting statements of lay witnesses.  An ALJ may discount lay witness statements that are not consistent with the medical evidence, see Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001), or are inconsistent with a claimant's activities of daily living.  See Bayliss v. Barnhart, 427 F.3d 211, 218 (9th Cir. 2005).  The other reasons the ALJ cited as to particular lay witnesses are also supported by the record, and provided valid bases for the ALJ's assessment of this evidence.

5. **ALJ's RFC analysis**

Plaintiff contends that the ALJ erred in concluding that he retained the functional capacity to work at all exertional levels, limited only by the requirements that the work involve short simple instructions, that the tasks performed be routine, and that only occasional brief interaction with the general public, coworkers, and supervisors be required.  He argues that the ALJ erred in assessing his RFC by failing to consider the opinions of Dr. Burlingame and statements of Ms. Smith, giving ME Moore's testimony "great weight" without sufficient explanation, failing to consider relevant lay witness evidence, failing to consider his ADHD, failing to include in his RFC the findings of "moderate" limitations in concentration, persistence and pace he had found at earlier stages of his disability analysis, and in concluding that a

FINDINGS AND RECOMMENDATION – 22

limitation to "simple, routine work" sufficiently accounted for those limitations.  Plaintiff also

asserts that the ALJ erred in failing to address evidence received from a representative of one of

his former employers stating that his job performance was adversely affected by problems of

judgment, reliability, emotional stability, inconsistency of performance, quality of work

problems, slowness, and difficulties cooperating or getting along with coworkers, the public, or

supervisors.  He contends that the vocational hypothetical that the ALJ posed to the VE was

faulty because it was based upon an RFC that was not supported and was contrary to law.

      If this action is remanded to address the deficiencies in the ALJ's decision discussed

above, further analysis may result in a reassessment of Plaintiff's RFC.  However, because it is

possible that Plaintiff's RFC will not be altered on remand, I will briefly address several of

Plaintiff's arguments concerning the assessment of his RFC.  In arguing that the RFC assessment

is invalid because the ALJ erred in failing to characterize his ADHD as a severe impairment and

in failing to include the assessment of moderate limitations in concentration, persistence, and

pace that he found, Plaintiff transposes the requirements of steps 2 and 3 of disability analysis

with the requirements of steps 4 and 5.  The ALJ's determination at step 2 that Plaintiff's ADHD

was not a "severe" impairment was based upon evidence that it could be effectively treated with

medication, and was related to the step 3 determination whether Plaintiff had an impairment or

combination of impairments that was presumptively disabling.  The ALJ specifically noted that

his finding that Plaintiff had moderate difficulties in concentration, persistence, and pace was

related to his step 3 evaluation of whether Plaintiff had a presumptively disabling impairment,

and was not "a residual functional capacity assessment . . . used at steps 4 and 5 . . . ."  ALJ's

decision at 18.  The ALJ's findings at steps 2 and 3 did not require particular RFC findings,

which are relevant at steps 4 and 5.  See Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007)

(finding of "moderate" mental limitations does not require conclusion that claimant has per se significant non-exertional limitations).

The question here is whether the ALJ's RFC assessment included all of Plaintiff's non-exertional limitations.  Citing an unpublished Ninth Circuit opinion and decisions from two other circuits, Plaintiff contends that a limitation to "simple" work cannot sufficiently account for deficiencies in concentration, persistence, and pace.  This argument fails.  An RFC assessment that is "consistent with the restrictions identified in the medical testimony" adequately sets out restrictions that are related to concentration, persistence, and pace.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).  An ALJ's determination that a claimant can perform "simple tasks" sufficiently reflects those limitations if it reflects the medical evidence.  See id. at 1173-74.  Here, the ALJ's RFC assessment limited Plaintiff to work requiring him to carry out short simple instructions, perform routine tasks, and tolerate brief interactions with the general public, coworkers, and supervisors.  This assessment adequately reflected the limitations imposed by evidence that the ALJ accepted.  Unless the assessment of Plaintiff's RFC is altered on remand, the RFC and related vocational hypothetical are sufficient.

Finally, I note my disagreement with Plaintiff's assertion that the ALJ erred in failing to address a "check off" questionnaire submitted by Standard Airport Parking Service, which employed Plaintiff briefly in 2007.  As the Commissioner correctly notes, an ALJ is not required to address all of the evidence presented, but instead must only "explain why 'significant, probative evidence has been rejected.' " Vincent v. Heckler, 739 F. 2d 1393, 1395 (9th Cir. 1984) (citation omitted).  The Commissioner asserts that this questionnaire was not significant, probative evidence, and in any event identified only problems that were accommodated by the ALJ's RFC.  I agree.  Many of the "check off" boxes on the form were left blank, and no written

FINDINGS AND RECOMMENDATION – 24

explanation for the basis of the answers was provided.  Though some of the answers might support Plaintiff's allegations as to the severity of his impairments, others do not.  For example, the form indicates that Plaintiff had no problems with attention, concentration, memory, or stress, and that Plaintiff demonstrated "work avoidance behavior."  Plaintiff has not demonstrated that this work report constituted significant, probative evidence, or why the absence of any discussion of it constituted error.

## Conclusion

A Judgment should be entered REVERSING the decision of the Commissioner, and REMANDING this action to the Agency for further proceedings.  The Judgment should provide that, on remand:

1. The ALJ shall clearly state conclusions as to Plaintiff's credibility.  If Plaintiff is found not to be wholly credible, the parts of his testimony not considered credible must be identified, and evidence supporting the conclusion that this testimony is not credible must be cited;

2. The ALJ shall specifically address Dr. Burlingame's records and opinions, and either accept those opinions or provide specific and legitimate reasons, supported by substantial evidence in the record, for their rejection;

3. The ALJ shall either credit Ms. Smith's statements or provide a clear explanation of the basis of their rejection, and shall not reject her statements concerning the severity of Plaintiff's

FINDINGS AND RECOMMENDATION – 25

impairments and how they affect his ability to function on the grounds that she is not an

"acceptable medical source;" and

4. The ALJ shall reassess Plaintiff's RFC if that is required by conclusions drawn based upon the

above instructions, and shall conduct any additional proceedings required by any alteration in

Plaintiff's RFC.

### Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections,

if any, are due February 21, 2012.  If no objections are filed, then the Findings and

Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with

a copy of the objections.  When the response is due or filed, whichever date is earlier, the

Findings and Recommendation will go under advisement.

DATED this 2nd day February, 2012.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION – 26